IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FILED**

OCT 10 2014

Clerk, U.S. District and
Bankruptcy Courts

**UNITED STATES OF AMERICA**
*ex rel.* BRIDGETTE CARMICHAEL, and

**BRIDGETTE CARMICHAEL,**
5501 Foote Street NE, #5
Washington, DC 20019

  Plaintiffs,

v.

**RAYMOND GREGORY,**
14 Beth Court
Owings Mills, MD 21117

  Defendant.

Case: 1:14-cv-01702
Assigned To : Leon, Richard J.
Assign. Date : 10/10/2014
Description: General Civil

**FILED UNDER SEAL PURSUANT TO
31 U.S.C. § 3730(b)(2)**

**DO NOT PLACE IN PRESS BOX
DO NOT ENTER ON PACER**

## COMPLAINT

### INTRODUCTION

This action is brought under the False Claims Act, 31 U.S.C. § 3729 *et seq. Qui tam* Plaintiff Bridgette Carmichael, a low-income resident of the District of Columbia, rented residential property from Defendant Raymond Gregory, and received housing assistance through the Section 8 Housing Choice Voucher Program, a federally regulated rent subsidy program. Throughout Ms. Carmichael's tenancy, Mr. Gregory unjustly enriched himself by unlawfully overcharging Ms. Carmichael rent, creating undue financial hardship. Mr. Gregory violated federal law by knowingly making false claims and representations to the federal government concerning the collection of unauthorized rent payments from Ms. Carmichael, greater than the amounts the federal government allowed him to collect from her.

**RECEIVED**

SEP 30 2014

Clerk, U.S. District and
Bankruptcy Courts

The federal Department of Housing and Urban Development issued a fraud alert in 2008, calling the problem of landlords submitting false claims to HUD for periodic payments "a recurring problem." 73 Fed. Reg. 39713 (July 10, 2008).

> Improperly requiring tenants to pay rent in excess of what is authorized by the applicable HAP contract represents both an actionable offense under the False Claims Act and deplorable behavior directed towards the very persons whom the HCV program was designed to serve. (Additionally, depending on the intent, such an action may qualify as a criminal offense under 18 U.S.C. 287, 1343, etc.) OIG will not tolerate such conduct, and rather will cooperate with efforts to bring offending landlords to justice and to remedy their wrongs.

Id.

Ms. Carmichael seeks a statutory share of any awarded damages paid to the United States under the False Claims Act, overpaid monies, expenses, costs, and reasonable attorneys' fees. The United States seeks all remedies available under the False Claims Act.

## PARTIES

1. Plaintiff United States of America is *ex rel.* Bridgette Carmichael.

2. Relator-Plaintiff Bridgette Carmichael ("Ms. Carmichael") was a tenant of Defendant, residing at 2407 17th Place SE, Washington, DC 20020 (the "Premises") from sometime in October 2008 until sometime in August 2013. Ms. Carmichael resided at the Premises with her family. She was solely responsible for paying the rent, electric, gas and water bills, along with all other household expenses, including food, clothing and transportation. She had no source of income other than public assistance.

3. Upon information and belief, Defendant Raymond Gregory ("Mr. Gregory" or "Defendant") owned the Premises during Ms. Carmichael's tenancy, is engaged in commerce (leasing dwelling units) in the District of Columbia, and resides in Owings Mills, Maryland.

## JURISDICTION

4. This court has jurisdiction over the federal claims raised herein, pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1332, and 31 U.S.C. § 3732(a).

5. This court has supplemental jurisdiction over the state claims raised herein, pursuant to 28 U.S.C. § 1367(a).

## VENUE

6. Defendant committed the unlawful acts in the District of Columbia. Venue is proper under 28 U.S.C. § 1391(b)(2).

## SECTION 8 TENANT-BASED HOUSING CHOICE VOUCHER PROGRAM

7. The Section 8 Housing Choice Voucher Program ("HCVP") is a federal program that assists low-income families in obtaining decent, safe, sanitary, and affordable housing. The program is authorized by Section 8 of the U.S. Housing Act of 1937, 42 U.S.C. § 1437(f). Regulations governing the Section 8 program are contained in 24 C.F.R. Part 982.

8. Under the HCVP, a tenant family enters into a lease with a landlord/owner. The lease continues until its expiration or termination by the owner, the participant family, or by the public housing agency (PHA). Generally, participants pay 30 to 40 percent of their adjusted monthly income toward the rent and utilities, or in certain cases, slightly more, while the PHA pays the balance. 24 C.F.R. Part 982.

9. The United States Department of Housing and Urban Development ("HUD") administers the program.

10. HUD enters into annual contribution contracts with PHAs, such as the District of Columbia Housing Authority ("DCHA").

11. Pursuant to an annual contribution contract, the PHA may enter into a HUD form contract known as a Housing Assistance Payments ("HAP") contract with the landlord of a dwelling unit, whereby the PHA will make monthly housing assistance payments on behalf of an eligible tenant family.

12. The landlord simultaneously enters into a lease for the dwelling unit with the family. The lease must contain federally mandated terms or be on a HUD form.

13. The HAP contract establishes the initial lease term and initial monthly rent to the landlord. The landlord may not increase the total rent payable to the landlord during the initial lease term.

14. The sum of the housing assistance payment and the tenant's share of the rent payable to the landlord is known as the contract rent.

15. Part B, Section 8(d) of the standard HAP contract provides that a landlord is not permitted to accept payments from any source greater than the contract rent.

16. The standard HAP contract also sets out the amount of the housing assistance payment by the PHA to the landlord, calculated in accordance with the regulations.

17. The standard HAP contract provides that the tenant is responsible for paying the landlord the balance of the rent not covered by the housing assistance payment.

18. The amount of the PHA's monthly housing assistance payment to the landlord is determined in accordance with HUD regulations for the Section 8 program.

## STATEMENT OF FACTS

19. Ms. Carmichael was a recipient of housing assistance from DCHA under the Section 8 HCVP, for her tenancy at the Premises, from on or about October 1, 2008, to on or about August 30, 2013. Ms. Carmichael was a continuous resident of the Premises during this time.

20. She entered into a lease agreement with Mr. Gregory on or about October 1, 2008. Ms. Carmichael's husband, son and daughter lived at the Premises with her during some or all of her tenancy. Ms. Carmichael was solely responsible for paying the rent, electric, gas and water bills, along with all other household expenses, including food, clothing and transportation.

21. On or about October 28, 2008, Mr. Gregory entered into a HAP contract with DCHA for the Premises, for a term beginning October 28, 2008. The initial contract rent to Defendant was $1603 per month.

22. On or about December 4, 2008, DCHA sent a letter making its rent determinations retroactive to September 1, 2008. Upon information and belief, the HAP Contract specified: "During the HAP contract term, the rent to owner may at no time exceed the reasonable rent for the contract unit as most recently determined or redetermined by the PHA in accordance with HUD requirements."

23. Upon information and belief, it further specified: "Unless the owner has complied with all provisions of the HAP contract, the owner does not have a right to receive housing assistance payments under the HAP contract."

24. And upon information and belief, it further specified: "During the term of this contract, the owner certifies that:...Except for the rent to owner, the owner has not received and

will not receive any payments or other consideration (from the family, the PHA, HUD, or any other public or private source) for rental of the contract unit during the HAP contract term."

25. And further: "The owner may not charge or accept, from the family or from any other source, any payment for rent of the unit in addition to the rent to the owner."

26. And further: "The owner must immediately return any excess rent payment to the tenant."

27. And further: "The owner certifies that the terms of the lease are in accordance with all provisions of the HAP contract..."

28. However, Mr. Gregory informed Ms. Carmichael at the inception of her tenancy that, because DCHA was not paying him what he considered to be the full value of the house, he would need to charge her an extra $100 in rent per month.

29. Ms. Carmichael believed she had to pay Mr. Gregory whatever rent he charged her, or face eviction.

30. Upon information and belief, Ms. Carmichael began paying Mr. Gregory $100 per month more than she was required to, starting in October 2008.

31. In December 2008, an HCVP Owner Notice of Recertification was sent by DCHA to Mr. Gregory notifying him that Ms. Carmichael's total contract rent was $1603 per month. This Notice said Ms. Carmichael would have to pay Mr. Gregory $181 per month, effective September 1, 2008.

32. In April 2010, an HCVP Letter of Recertification was sent to Ms. Carmichael by DCHA, stating the total contract rent was $1603 per month. The Letter said Ms. Carmichael would need to pay Mr. Gregory $212 per month, effective June 1, 2010.

33. In December 2011, Defendant asked DCHA to approve a $200/month increase in the contract rent. This request was subsequently denied by DCHA.

34. In February 2012, an HCVP Letter of Recertification was sent to Ms. Carmichael by DCHA stating the total contract rent was $1603 per month, and that Ms. Carmichael would need to pay Defendant $238 per month, effective July 1, 2012.

35. On or about July 6, 2013, Mr. Gregory informed Ms. Carmichael that her rent was increasing to $1653 per month.

36. Upon information and belief, Mr. Gregory never obtained authorization from DCHA for this increase.

37. From approximately October 2008, to approximately June 2012, Ms. Carmichael paid Mr. Gregory at least $100 more per month than her contract rent.

38. From approximately July 2012 to approximately August 2013, Ms. Carmichael paid Mr. Gregory at least $50 more per month than her contract rent. (Mr. Gregory had reduced the demanded additional payment from $100 to $50 per month at that time.)

39. From about October 2008 to about August 2013, Ms. Carmichael was only obligated to pay Defendant approximately $12,252. However, Mr. Gregory actually charged and received approximately $17,452 from Ms. Carmichael, a difference of $5,200.

40. Neither HUD nor DCHA authorized Mr. Gregory to charge or collect more monthly rent than the contract rent approved by DCHA.

41. Upon information and belief, Mr. Gregory endorsed and presented for payment at least 59 separate housing assistance payment checks totaling $82,325, while simultaneously receiving overpayments from Ms. Carmichael totaling $5,200.

42. At the time he made each such endorsement, Mr. Gregory knew that he was collecting more rent from Ms. Carmichael than DCHA had authorized him to collect, and that this violated his agreement with the federal government.

43. This created an undue financial burden on Ms. Carmichael and her family.

44. In the winter of 2012, the electric and gas were shut off. Ms. Carmichael had fallen behind on her monthly payments. The additional rent unlawfully demanded by Mr. Gregory could have been used towards utilities.

45. On multiple occasions, Ms. Carmichael ran out of gas in her car, and her children would have to take public transportation to school.

46. The money Mr. Gregory unlawfully demanded from Ms. Carmichael could have been used towards important living costs for the family, who were struggling to live on a low income.

## COUNT I (VIOLATION OF FALSE CLAIMS ACT, 31 U.S.C § 3729)

47. Plaintiff incorporates by reference Paragraphs 1-46.

48. The False Claims Act ("FCA") provides that any person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" to the United States is liable on each such claim "for a civil penalty of not less than $5,000 and not more than $10,000…plus 3 times the amount of damages which the Government sustains because of the act of that person." In addition, any person who violates the FCA is liable for the costs of the civil action brought to recover such penalty or damages. 31 U.S.C § 3729(a).

49. The FCA defines the terms "knowing" and "knowingly" as meaning, with respect to information, that a person "(i) has actual knowledge of the information; (ii) acts in

deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or the falsity of the information," and "no proof of specific intent to defraud" is required. 31 U.S.C § 3729(b).

50. The FCA defines a "claim" as "any request or demand, whether under a contract or otherwise, for money or property...[which] is made to a contractor, grantee, or other recipient" if the United States Government "provides or has provided any portion of the money or property requested or demanded," or if the Government "will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded." 31 U.S.C § 3729(c).

51. For each month that Mr. Gregory accepted the additional rent payments from Ms. Carmichael, Mr. Gregory endorsed and presented for payment the housing assistance payment checks received from DCHA.

52. Mr. Gregory knowingly endorsed and presented for payment at least 59 separate housing choice voucher program checks totaling at least $82,000, while receiving additional monthly payments from Ms. Carmichael above the contract rent.

53. Mr. Gregory's endorsement and presentation for payment of each assistance check for each month, while knowingly demanding and collecting from Ms. Carmichael additional rental payments above the contract rent, constitutes a separate false claim or representation against the United States.

54. The HAP contract that Mr. Gregory signed made clear to Defendant that he was not permitted to charge Ms. Carmichael more than the approved amount. Therefore, his certifications to the United States were knowingly false.

55. The United States suffered damages as a result of violations of the False Claims Act, because the money which HUD dispersed to the DCHA for payment of Section 8 housing choice voucher payments would not have been paid to the Defendant absent his false claims and misrepresentations.

56. The United States sustained damages equal to all payments made to the Defendant pursuant to Ms. Carmichael's Section 8 housing choice voucher program, for which Mr. Gregory also received additional rent payments from Ms. Carmichael above the contract rent. See, e.g., *United States ex rel. Stearns v. Lane*, 2010 WL 3702538 (D.Vt. 2010); *United States ex rel. Wade v. DBS Investments, LLC*, 2012 WL 3759015 (S.D.Fla. 2010); *U.S. ex rel. Coleman v. Hernandez*, 490 F. Supp.2d 278 (D. Conn. 2007); *United States ex rel. Sutton v. Reynolds*, 564 F.Supp.2d 1183 (D.Ore. 2007); and *U.S. ex rel Smith v. Gilbert Realty*, 840 F.Supp. 71 (E.D.Mich 1993).

57. Upon information and belief, had the United States known of the falsity of the claims, it would have paid nothing to Mr. Gregory.

## COUNT II: UNJUST ENRICHMENT

58. Plaintiff incorporates by reference Paragraphs 1-46.

59. ""Unjust enrichment occurs when: (1) the plaintiff conferred a benefit on the defendant; (2) the defendant retains the benefit; and (3) under the circumstances, the defendant's retention of the benefit is unjust." *Fort Lincoln Civic Ass'n v. Fort Lincoln New Town Corp.*, 944 A.2d 1055, 1076 (D.C. 2008).

60. Mr. Gregory was unjustly enriched when he unlawfully collected and retained additional rent money from Ms. Carmichael.

61. Mr. Gregory did not return this money to Ms. Carmichael.

62. Punitive damage are recoverable in a contract-based action when "acts of the breaching party are malicious, wanton, oppressive or with criminal indifference to civil obligations." *Mark Keshishian & Sons, Inc. v. Washington Square, Inc.*, 414 A.2d 834 (D.C. 1980).

63. By overcharging Ms. Carmichael rent, Mr. Gregory committed acts that entitle Ms. Carmichael to punitive damages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs Bridgette Carmichael and the United States of America respectfully request the following relief:

A. Find that Mr. Gregory violated the False Claims Act and is liable to the United States of America.

B. Assess a civil penalty against Mr. Gregory for 59 separate violations of the False Claims Act, in the amount of not less than $5,000 and not more than $10,000 per violation.

C. Award the United States three times the amount of damages that it sustained as a result of Mr. Gregory's acts, for a total of $82,235 times three, or $246,705.

D. Award Ms. Carmichael the *qui tam* plaintiff's share of the proceeds or settlement pursuant to 31 U.S.C. § 3730(d).

E. Award Ms. Carmichael $5,200 in rent overpayments.

F. Award Ms. Carmichael $15,000 in punitive damages.

G. Award attorney's fees, expenses, and costs pursuant to 31 U.S.C. § 3730(d).

H. Grant such other relief as the court deems proper.

Respectfully submitted,

*[signature]*

Marc Borbely, D.C. Bar No. 489871
D.C. Tenants' Rights Center
406 5th Street NW, Suite 300
Washington, DC 20001
Telephone: (202) 681-6871
Fax: (202) 640-5117
Email: borbely@dcTenants.com

*Counsel for Relator-Plaintiff Bridgette Carmichael*