UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.*, )<br>BRIDGETTE CARMICHAEL, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>RAYMOND GREGORY, )<br>)<br>Defendant. ) | Civil Case No. 14-1702 (RJL) |

MEMORANDUM OPINION
September 5, 2017 [Dkt. #17]

FILED
SEP - 6 2017
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

The United States and their relator, Bridgette Carmichael, allege that Raymond Gregory knowingly submitted false statements to the D.C. Housing Authority ("DCHA") in order to obtain federal funds made available by the U.S. Department of Housing and Urban Development ("HUD") through the Section 8 Housing Choice Vender Program (the "Program"). Despite having been served with the complaint and summons more than twenty months ago, Gregory has never appeared in this action. Before the Court is the United States' and Relator's Motion for Default Judgment and to Set Relator's Share (the "Motion") [Dkt. #17]. Upon consideration of the Motion, pleadings, relevant law, and the entire record herein, the Court will GRANT the Motion and enter default judgment in favor of the United States in a total amount of $587,999.00, consisting of $246,999.00 in treble damages and $341,000.00 in civil penalties. The Court will set relator's share at 15 percent of any sums collected by the United States pursuant to the default judgment.

## BACKGROUND

From October 2008 through September 2013, Raymond Gregory rented a residential property in the District of Columbia to Bridgette Carmichael and her family. United States' Compl. in Intervention ¶¶ 7–8 ("Gov't Compl.") [Dkt. #12]. Carmichael is a low-income resident of the District and an eligible tenant under the Program. Gov't Compl. ¶ 28. At the outset of the rental, Gregory and Carmichael agreed that rent for the property would be $1,800.00 per month, and executed an initial lease to that effect. Gov't Compl. ¶ 30.

After executing the initial lease, Gregory and Carmichael applied to DCHA to have their lease approved under the HUD Program. Gov't Compl. ¶ 31; *see also* Mot., Ex. 1 (Request for Tenancy Approval) [Dkt. #17-1].[1] DCHA determined that $1,800.00 per month was *not* the appropriate fair-market rate and set the rent at $1603.00 per month. Gov't Compl. ¶ 32. DCHA also set the initial federal housing assistance payment at $898.00 per month, leaving Carmichael responsible for $705.00 per month. Gov't Compl. ¶ 33. In late October 2008, Gregory visited DCHA's offices and executed the requisite paperwork. This included a HUD-form Housing Assistance Payment Contract (the "HAP Contract"), which reflected the DCHA approved monthly rental rate of $1,603.00 and the federal housing assistance payment of $898.00. Gov't Compl. ¶¶ 34–35; *see also* Mot., Ex. 3 (HAP Contract) [Dkt. #17-3]. Carmichael and Gregory also executed a letter agreement containing these terms and specifying Carmichael's contribution of $705.00. Gov't Compl. ¶ 36; *see also* Mot., Ex. 2 (letter agreement) [Dkt. #17-2]. In addition,

---

[1] DCHA administers the Program on behalf of HUD in the D.C. area and is reimbursed by HUD for housing payments authorized under the Program. Gov't Compl. ¶ 20.

Carmichael, Gregory, and DCHA executed a Lease Information Form agreement which contained these terms, and, among other things, informed Gregory that he could not charge Carmichael any additional sums or rent increases without DCHA approval. Gov't Compl. ¶¶ 37–38; *see also* Mot., Ex. 4 (Lease Information Form) [Dkt. #17-4]. Finally, Gregory executed a direct deposit agreement with DCHA in which he agreed to accept housing assistance payments as electronic deposits and certified that he would remain in compliance with all terms and conditions of the Program as a condition of receiving those payments. Gov't Compl. ¶ 39; *see also* Mot., Ex. 5 (Authorization Agreement for Direct Deposit) [Dkt. #17-5].

Despite executing these agreements, Gregory required Carmichael to pay more than the total monthly amount approved by DCHA. From October 2008 through July 2012, Gregory set the rent at $1,700.00 per month, nearly $100 more than allowed by the HAP Contract. Gov't Compl. ¶¶ 41–42. From August 2012 through September 2013, Gregory set the rent at $1,653.00 per month, or $50.00 more than allowed by the HAP Contract. Gov't Compl. ¶ 46. For each period, Gregory executed a revised lease with Carmichael stating the total monthly rent. Gov't Compl. ¶¶ 41, 46; *see also* Mot., Exs. 6 (2008 lease) and 9 (2012 lease) [Dkts. ##17-6, 17-9]. In December 2011, Gregory sought approval from DCHA to increase the monthly rent to $1803.00 per month. Gov't Compl. ¶ 45; *see also* Mot., Ex. 7 (Rent Increase Request Form) [Dkt. #17-7]. The agency denied his request and determined that the monthly rent would remain $1603.00. Gov't Compl. ¶ 45; *see also* Mot., Ex. 8 (letter denying request) [Dkt. #17-8]. All told, during the period Gregory rented the property to Carmichael, he received sixty-two payments of federal funds through the

Program, totaling $82,333.00. Gov't Compl. ¶¶ 48–51; *see also* Mot., Ex. 10 (list of individual payments) [Dkt. #17-10].

Carmichael filed this action in October 2014, asserting claims for violations of the False Claims Act ("FCA"), 31 U.S.C. § 3729, *et seq.*, and for unjust enrichment. *See* Compl. [Dkt. #1]. The United States sought and received from the Court several extensions of time to conduct its own investigation of the facts and consider whether it would intervene. In late September 2015, the United States noticed its election to intervene, and in early October the Court unsealed relevant portions of the record and directed the parties to serve Gregory. *See* Order (Oct. 2, 2015) [Dkt. #10]. Gregory was served on January 26, 2016, but has never appeared in the case. On May 18, 2016, the Clerk of Court declared Gregory in default, and in February 2017, the United States and Carmichael filed the instant Motion for default judgment.

## ANALYSIS

Federal Rule of Civil Procedure 55 establishes a two-step process for obtaining default judgment. First, a plaintiff must request that the Clerk of the Court enter a default against the party who has "failed to plead or otherwise defend" against an action. Fed. R. Civ. P. 55(a). Once default has been entered, the plaintiff may move for default judgment. Fed. R. Civ. P. 55(b). Default establishes the defaulting party's liability for the well-pleaded allegations of the complaint. *See Fanning v. Wellman Dynamics Corp.*, 113 F. Supp. 3d 172, 174 (D.D.C. 2015). It does not, however, establish the amount of damages owed. *Id.* Unless the amount of damages is certain, the court is required to make an independent determination of the sum to be awarded. *Id.* That determination may be based

on detailed affidavits or documentary evidence. *See Flynn v. Mastro Masonry Contractors*, 237 F. Supp. 2d 66, 69 (D.D.C. 2002). A hearing is not required. *See id.*; *Embassy of Fed. Republic of Nigeria v. Ugwuonye*, 945 F. Supp. 2d 81, 85 (D.D.C. 2013). Although generally disfavored, default judgment is appropriate "when the adversary process has been halted" by an unresponsive party. *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980).

Here, the well-pleaded facts in the United States' complaint are sufficient to establish liability for violations of the FCA. A presentment claim under the FCA must allege "that '(1) the defendant submitted a claim to the government, (2) the claim was false, and (3) the defendant knew the claim was false.'" *United States ex rel. Tran v. Computer Scis. Corp.*, 53 F. Supp. 3d 104, 121–22 (D.D.C. 2014) (quoting *United States ex rel. Head v. Kane Co.*, 798 F. Supp. 2d 186, 196 (D.D.C. 2011)) (alteration omitted). First, the complaint alleges that Gregory submitted requests to DCHA for payment of federal funds provided by HUD. Such requests are cognizable as claims under the FCA. *See, e.g., Doe v. Gormley*, Civ. A. No. 15-2183, 2016 WL 4400301, at *5 (D. Md. Aug. 17, 2016) (collecting cases where "courts have specifically held that collecting illegal side-rent, in the context of housing voucher programs, violates the FCA").

Second, the complaint alleges that the claims submitted by Gregory were false. By submitting requests for payment, Gregory impliedly certified his compliance with HUD Program rules concerning the amount of rent he was permitted to charge Carmichael. *See United States v. SAIC*, 626 F.3d 1257, 1269 (D.C. Cir. 2010) (holding monthly invoice qualified as a false claim under the FCA); *United States ex rel. Wade v. DBS Investments, LLC*, Civ. A. No. 11-20155, 2012 WL 3759015, at *3 (S.D. Fla. Aug. 29, 2012) ("[A]

5

landlord commits fraud when that landlord endorses or presents for payment housing assistance payment checks while knowingly receiving additional payments in excess of that approved[.]"). Nor is there any doubt that the amount of rent he charged is a "material" term of the Program. *Cf. Universal Health Servs., Inc. v. United States ex rel. Julio Escobar*, 136 S. Ct. 1989, 1996 (2016) (holding implied false certifications "must be material to the Government's payment decision in order to be actionable under the False Claims Act"). The Program exists "[f]or the purpose of aiding low-income families in obtaining a decent place to live," 42 U.S.C. § 1437f(a), and that purpose is clearly undermined when a program participant overcharges a beneficiary of the program.

Third, the complaint provides an adequate basis for inferring that Gregory knew the claims he submitted were false. The terms "knowing" or "knowingly" under the FCA "mean that a person, with respect to information—(i) has actual knowledge of the information; (ii) acts in deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of the truth or falsity of the information." 31 U.S.C. § 3729(b)(1)(A). They "require no proof of specific intent to defraud." *Id.* § 3729(b)(1)(B). In addition to pleading scienter generally, the complaint alleges and the record shows that Gregory was told by DCHA what he was permitted to charge, and that Gregory sought unsuccessfully to have DCHA change the authorized rent (thereby confirming his knowledge of the authorized amount). Moreover, the complaint alleges and the record shows that Gregory executed at least two revised leases with Carmichael. These allegations are sufficient to plead scienter and to establish Gregory's default.

The issue that remains is damages. "The FCA 'imposes two types of liability.'" *SAIC*, 626 F.3d at 1277 (quoting *United States ex rel. Bettis v. Odebrecht Contractors of Cal., Inc.*, 393 F.3d 1321, 1326 (D.C. Cir. 2005)). "First, a defendant who submits a false claim or makes a false statement to get a false claim paid is liable for civil penalties regardless of whether the government shows that the submission of that claim caused the government damages." *Id.* "Second, the defendant is liable for '3 times the amount of damages which the Government sustains because of the act of [the defendant].'" *Id.* at 1277–78 (quoting 31 U.S.C. § 3729(a)) (alteration in original). Where, as here, "the defendant fraudulently sought payments for participating in programs designed to benefit third-parties rather than the government itself," the damages sustained by the United States are the full value of "all payments made." *Id.* at 1279 (citing *United States v. TDC Mgmt. Corp.*, 288 F.3d 421, 428 (D.C. Cir. 2002)).

The United States assert that in this case, the total value of the treble damages and penalties owed by Gregory is $587,999.00. After making an independent evaluation, the Court agrees. The complaint alleges and the record shows that Gregory requested and received $82,333.00 in federal funds from DCHA in connection with his rental to Carmichael. Gov't Compl. ¶ 48; Mot., Ex. 10 (list of individual payments). Treble that figure is $246,999.00. In addition, the complaint alleges and the record shows that Gregory submitted a total of sixty-two false claims. Gov't Compl. ¶ 49; Mot., Ex. 10. The minimum civil penalty for each false claim is $5,500.00. *See* 31 U.S.C. § 3729(a)(1)(G) (civil penalties); 28 C.F.R. § 85.3(a)(9) (civil penalties adjusted for inflation). The minimum

civil penalty is therefore $341,000.00. Accordingly, the Court will enter default judgment in the amount of $587,999.00.

The FCA provides that where "the Government proceeds with an action brought" by a *qui tam* relator, the relator is entitled to "receive at least 15 percent but not more than 25 percent of the proceeds of the action or settlement of the claim, depending upon the extent to which the person substantially contributed to the prosecution of the action." 31 U.S.C. § 3730(d)(1). Here, the United States and Carmichael have agreed that Carmichael's share should be 15 percent. The Court will adopt that agreement, even though conduct as egregious as Gregory's might well warrant an even more generous arrangement.

## CONCLUSION

For all of the above reasons, the Court will enter default judgment in favor of the United States in a total amount of $587,999.00, consisting of $246,999.00 in treble damages and $341,000.00 in civil penalties. The Court will set relator's share at 15 percent of any sums collected by the United States pursuant to the default judgment. An Order consistent with this decision accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge