UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FILED
SEP 2 7 2019
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

UNITED STATES OF AMERICA, *ex rel.*, )
BRIDGETTE CARMICHAEL, )
                                                      )
               Plaintiff, )
                                                        )
v.                                                 )    Civil Case No. 14-1702 (RJL)
                                                        )
RAYMOND GREGORY, )
                                                        )
               Defendant. )

## MEMORANDUM OPINION
(September 27, 2019) [Dkt. # 23]

This Court entered default judgment against defendant Raymond Gregory ("Gregory") in this case on September 6, 2017. One year later, Gregory filed a Motion for Relief from Default Judgment Pursuant to Federal Rule of Civil Procedure 60 ("Def.'s Mot.") [Dkt. # 23]. For the reasons that follow, Gregory's motion must be DENIED.

### BACKGROUND

On October 10, 2014, the relator, Bridgette Carmichael ("Carmichael"), sued Gregory, alleging that he had unlawfully overcharged her for rent while she was living in a residential property he owned. *See* Compl. ¶¶ 28–30, 47–63 [Dkt. # 1]. Carmichael and Gregory initially agreed to set her rent at $1,800 per month. *See* Def.'s Mot., Gregory Affidavit ¶ 7. They submitted their proposed lease to the District of Columbia Housing Authority ("DCHA"), whose approval was necessary because Carmichael received rent assistance through the Department of Housing and Urban Development's ("HUD's")

Section 8 Housing Choice Voucher Program. *See id.* ¶ 7; Compl. ¶¶ 7–19. DCHA reviewed the lease, lowered the monthly rent to $1,603, and prescribed how much of the $1,603 Carmichael would be responsible for paying each month. *See* Def.'s Mot., Gregory Affidavit ¶ 8; U.S. Opp. to Def.'s Mot. for Relief from Default J. ("Opp. to Def.'s Mot."), Ex. A [Dkt. # 26]. Gregory and Carmichael expressly accepted DCHA's changes. They executed a contract that provided Gregory could *not* charge more than $1,603 in monthly rent without DCHA approval. *See* U.S. Compl. in Intervention ¶ 38 [Dkt. # 12]. And DCHA never approved a rent increase during Carmichael's tenancy. *See United States ex rel. Carmichael v. Gregory*, 270 F. Supp. 3d 67, 69–70 (D.D.C. 2017) ("*Gregory I*").

In her complaint, Carmichael alleged that, despite the express agreement, Gregory increased her rent to an amount that exceeded the DCHA-approved amount, and charged her excess rent every month from October 2008 through August 2013. *See* Compl. ¶¶ 37–40. Her allegations are supported by two leases, signed by both Gregory and Carmichael, that reflect rents that were never approved by DCHA. The first lease, effective October 1, 2008, sets Carmichael's rent at $1700 per month. *See* Mot. for Default J., Ex. 6 [Dkt. # 17]. The second, effective July 6, 2012, sets rent at $1653 per month. *See id.*, Ex. 9.

Carmichael's complaint alleges that, by overcharging her for rent, Gregory violated the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.*, and thereby unjustly enriched himself.[1] *See* Compl. ¶¶ 47–63. The FCA, she contends, is implicated by the fact that

---

[1] Carmichael's complaint included a second claim for unjust enrichment under District of Columbia law. *See* Compl. ¶¶ 58–63. That claim fell out of the suit, however, when she sought default judgment for the FCA claim alone. *See* Mot. for Default J. at 1–2 & n.1.

2

Gregory, after overcharging Carmichael, endorsed housing assistance checks and then presented them for payment. *See id.* ¶¶ 47–57. Presenting the housing assistance checks for payment constituted "requests to DCHA for payment of federal funds provided by HUD." *Gregory I*, 270 F. Supp. 3d at 71. Doing so after falsely certifying compliance with the terms of the housing assistance program violates the FCA. *See id.*; *Doe v. Gormley*, No. 15-2183, 2016 WL 4400301, at *5 (D. Md. Aug. 17, 2016) (collecting cases).

Because Carmichael brought her suit under the FCA's *qui tam* provisions, the United States ("the Government") had a right to intervene as a party. *See* Compl. at 1; 31 U.S.C. § 3730(b)(2). The Government elected to exercise that right on September 23, 2015, *see* U.S. Notice of Election to Intervene [Dkt. # 9], and filed its Complaint in Intervention on March 25, 2016. The Government's complaint alleged two claims against Gregory, both for violating the FCA. *See* U.S. Compl. in Intervention ¶¶ 52–65.

Gregory did not answer either complaint. As a result, on May 18, 2016, the Clerk of Court declared him in default. *See Gregory I*, 270 F. Supp. 3d at 70. On February 17, 2017, the Government and Carmichael moved for entry of default judgment on the first FCA claim in the Government's complaint. *See* Mot. for Default J. at 1 & n.1, 18. And on September 5, 2017, I granted that motion. *See Gregory I*, 270 F. Supp. 3d at 72. I found that "Gregory was served [with process] on January 26, 2016," and that "the well-pleaded facts in the United States' complaint are sufficient to establish liability for violations of the FCA." *Id.* at 70–71. I then "enter[ed] default judgment in favor of the United States in a total amount of $587,999.00." *Id.* at 72. Carmichael, in turn, was awarded "15 percent of

any sums collected by the United States," as she was entitled under the FCA's *qui tam* provisions. *Id.*

Exactly one year after default judgment was entered, Gregory appeared for the first time in this action by filing a motion to vacate the default judgment under Federal Rule of Civil Procedure 60. *See* Def's Mot. at 10. Gregory somehow claims to have not received actual notice of this proceeding until the Government served him with a Notice of Default in May of 2016. *See* Def.'s Mot., Gregory Affidavit ¶ 19. After learning of his default, Gregory retained H. Caleb Griffin to represent him. *See* Def.'s Mot., Griffin Affidavit ¶¶ 1–5. Griffin neither appeared in, nor filed any paper related to, this case until September 6, 2018—more than two years after he was retained—when he filed Gregory's motion to vacate the judgment. In an affidavit, Griffin provides several personal and professional reasons that delayed his appearance. *See id.* ¶¶ 9–19. The reasons range from his need to seek admission to this Court's bar, to a lack of professional resources, to deaths in his family. *See id.*

In his motion, Gregory argues that the default judgment should be vacated under Rules 60(b)(1), 60(b)(3), and 60(b)(6) because his failure to answer was the result of excusable neglect, because the judgment is based on misrepresentations made by Carmichael, and because the judgment imposes harsh consequences.[2] *See* Def.'s Mot. at

---

[2] The introduction to Gregory's motion states that, in addition to seeking vacatur of the default judgment, he is requesting an order quashing service of the summons and complaint. But he raises no argument suggesting that the service in this case—which consisted of personal service on Ingrid Thompson, Gregory's wife, at their shared residence—was ineffective. *See* Fed. R. Civ. P. 4(e)(2)(B) (permitting service by "leaving a copy of [the summons and complaint] at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there"). Moreover, I previously found that Gregory was duly served, *see Gregory I*, 270 F. Supp. 3d at 70, and Gregory does not dispute the facts

4

5–11. The Government opposes all three of Gregory's theories for relief. *See* Opp. to Def.'s Mot. at 12–21. And ultimately, I have similarly concluded that Gregory is not entitled to Rule 60 relief under any theory. How so?

## ANALYSIS

### I. Gregory Has Not Established a Potentially Meritorious Defense.

In our Circuit, "a potentially meritorious defense is a precondition for Rule 60(b) relief." *FG Hemisphere Assocs., LLC v. Democratic Republic of Congo*, 447 F.3d 835, 842 (D.C. Cir. 2006). This requirement ensures "that vacating the judgment will not be an empty exercise or a futile gesture." *Id.* (quoting *Murray v. District of Columbia*, 52 F.3d 353, 355–56 (D.C. Cir. 1995)). It does not impose "a high bar" on movants: "even a hint of a suggestion which, proven at trial, would constitute a complete defense" will suffice. *Marino v. DEA*, 685 F.3d 1076, 1080 (D.C. Cir. 2012) (quotation marks and citations omitted). But "the party seeking to invoke Rule 60(b), bears the burden of establishing that its prerequisites are satisfied." *Owens v. Republic of Sudan*, 864 F.3d 751, 819 (D.C. Cir. 2017) (quotation marks and citations omitted). And "proposed . . . defenses [that] 'amount to nothing more than conclusory denials'" do not carry that burden. *Nat'l Rest. Ass'n Educ. Found. v. Shain*, 287 F.R.D. 83, 88 (D.D.C. 2012) (quoting *Gillespie v. Capitol Reprographics, LLC*, 573 F. Supp. 2d 80, 87 n.11 (D.D.C. 2008)). The only evidence that Gregory attaches, however, to his Rule 60 motion is bank statements from 2012 and 2013, an affidavit reciting Gregory's side of the story, and correspondence regarding

---

underlying that finding, *see* Def.'s Mot., Gregory Affidavit ¶ 19 (conceding that Gregory's wife was served). Accordingly, Gregory's request for an order quashing service is DENIED.

Carmichael's claims against him. *See* Def.'s Mot., Exs. A–F & Gregory Affidavit. This evidence, however, is either consistent with Carmichael's allegations or entirely conclusory. To say the least, it does not establish a potentially meritorious defense.

Gregory's bank statements, for example, are consistent with Carmichael's claims that she was overcharged for rent. The statements date back to June of 2012, when Carmichael's DCHA-approved share of the rent was $18 of the $1,603 total. *See* Opp. to Def.'s Mot., Ex. A. According to Gregory's submission, Carmichael paid him $140 that month, almost ten times what she owed for the month's rent. *See* Def.'s Mot., Ex. A. The next month, July 2012, Carmichael's approved share of the rent increased to $238 per month. *See* Opp. to Def.'s Mot., Ex. A. She also signed a new lease with Gregory in July 2012, setting the overall rent for the residence at $1,653 per month, $50 higher than what DCHA approved. *See* Mot. for Default J., Ex. 9. Several of Carmichael's post-July-2012 rent payments are for $288—exactly $50 more than Carmichael's approved $238 share. *See* Def.'s Mot., Ex. A. Other post-July payments were even higher. *See id.*

Gregory's bank statements, not surprisingly, corroborate numerous rent payments from Carmichael that exceed the rent prescribed by DCHA—sometimes by amounts that clearly suggest Gregory's unapproved leases were being enforced. Just as conspicuously, the bank statements do not show a single payment from Carmichael that equals her approved share of the monthly rent at the time of the payment. *Compare* Def.'s Mot., Ex. A *with* Opp. to Def.'s Mot., Ex. A.

In his affidavit, Gregory contends that Carmichael did sometimes overpay her rent but only to catch up on past missed payments. *See* Def.'s Mot., Gregory Affidavit ¶ 14.

Gregory, however, provides *no* accounting of how much past due rent Carmichael owed at any given time, and he supplies *no* correspondence informing Carmichael that she missed a payment. He argues that his bank statements show a history of missed payments, but in fact, the sum of the rent payments reflected in the statements exceeds Carmichael's total rent obligation for the period covered by them.[3] "[T]o make a sufficient showing of a meritorious defense in connection with a motion to vacate a default judgment, the defendant need not establish his defense conclusively, but he must present evidence of facts that, if proven at trial, would constitute a complete defense." *SEC v. McNulty*, 137 F.3d 732, 740 (2d Cir. 1998) (quotation marks and internal citation omitted). The facts established by Gregory's bank statements show only that Carmichael overpaid the prescribed rent—as she alleged—not that the overpayments were necessary to resolve arrears.

Gregory's attempt to explain away the leases reflecting unapproved rent is likewise conclusory. Gregory claims that he "would first get agreement with Ms. Carmichael and execute a lease . . . and then submit it to DCHA for approval." Def.'s Mot., Gregory Affidavit ¶ 11. He maintains that he did not "attempt to enforce" any lease reflecting

---

[3] Gregory claims that the "counter credits" shown in his bank statements, excluding certain credits that Gregory marked as child support payments, are Carmichael's rent payments. Those counter credits add up to $3,452. *See* Def.'s Mot., Ex. A ($140 on 6/18/2012 + $200 on 7/2/2012 + $350 on 8/8/2012 + $200 on 8/22/2012 + $288 on 12/3/2012 + $300 on 1/28/2013 + $288 on 2/5/2013 + $300 on 3/5/2013 + $288 on 4/3/2013 + $585 on 6/3/2013 + $213 on 7/22/2013 + $300 on 8/1/2013). Carmichael's cumulative rent obligation from June 2012 through August 2013 was $3,350. *See* Opp. to Def.'s Mot., Ex. A ($18 for June 2012 + $238 for July 2012 + $238 for August 2012 + $238 for September 2012 + $238 for October 2012 + $238 for November 2012 + $238 for December 2012 + $238 for January 2013 + $238 for February 2013 + $238 for March 2013 + $238 for April 2013 + $238 for May 2013 + $238 for June 2013 + $238 for July 2013 + $238 for August 2013).

unapproved rent. *Id.* But Gregory did not submit superseding or amended leases setting rent at the DCHA-approved amount. Nor did he provide correspondence from him to Carmichael memorializing that the unapproved leases will not be enforced. When the record contains leases setting rent higher than the DCHA-approved amount and bank statements showing that, in many months, Gregory's tenant paid more than her DCHA-approved share of the rent, his mere assertions that the illegal leases were not enforced is not sufficient to establish a potentially meritorious defense. *See 16 Cobalt LLC v. Harrison Career Inst.*, No. 06-175, 2007 WL 6688939, at *9–11 (D.D.C. Mar. 28, 2007) ("Defendant does not prevail on its first 'meritorious defense' because the terms of [a contract] expressly refute Defendant's claim . . . ."). Gregory has the burden of establishing such a defense, and "conclusory denials" do not discharge it. *Gillespie*, 573 F. Supp. 2d at 86 n.11.

The only evidence Gregory submits beyond his banks statements and affidavit is pre-suit correspondence with Carmichael's counsel. The correspondence shows that Carmichael's attorney advised Gregory of her claims against him in 2013 and that Gregory responded by disputing the claims. *See* Def.'s Mot., Exs. C–F. This confirms that both parties have maintained their respective positions since 2013. But like the rest of Gregory's submission, it does not evince a potentially meritorious defense that Gregory could raise in this suit. Because Gregory has not identified such a defense, his motion for relief from judgment must be denied. *See FG Hemisphere*, 447 F.3d at 842 ("[A] potentially meritorious defense is a precondition for Rule 60(b) relief . . . .").

## II. Gregory's Default Was Not Due to Excusable Neglect, Fraud, Misrepresentation, Misconduct, or Any Other Reason That Justifies Relief Under Rule 60.

Even if Gregory had a *potentially* meritorious defense, he still would not be entitled to the relief he seeks because the arguments Gregory raises for vacating the default judgment are all unavailing. How so?

Gregory first seeks to vacate the default judgment against him under Rule 60(b)(1) on the grounds that his failure to answer the complaint was "excusable neglect." "[T]he Supreme Court held that the determination of excusable neglect is an equitable matter and identified several relevant factors: the risk of prejudice to the non-movant, the length of delay, the reason for the delay, including whether it was in control of the movant, and whether the movant acted in good faith." *FG Hemisphere*, 447 F.3d at 838 (citing *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 393–95 (1993)). Here, the relevant factors weigh *against* Gregory.

To begin, the delay in this case is attributable to Gregory himself. In *Pioneer Investment Services Company v. Brunswick Associates Limited Partnership*, the case identifying the excusable neglect factors, the Supreme Court explained that an attorney's argument that he, rather than his client, should be blamed for a delay is entitled to "little weight" because "clients must be held accountable for the acts and omissions of their attorneys." 507 U.S. at 396–98. That reasoning disposes of much of Gregory's Rule 60(b)(1) argument, which relies heavily on his attorney attempting to take the blame for Gregory's failure to appear in this case between May 2016 and September 2018. In short, delays attributable to Gregory's counsel are attributable to Gregory as well. *See id.*

9

Indeed, in *Pioneer*, the Supreme Court suggested that neglect of counsel will rarely be excusable when "there [is] *any* evidence of prejudice to [an opponent] or to judicial administration in th[e] case." 507 U.S. at 398 (emphasis added). Here, Gregory's delay did, in fact, prejudice the Government and Carmichael. In his motion to vacate the judgment, Gregory furnished bank statements dating back *only* until July 2012, even though Carmichael alleged that she began overpaying rent in 2008. Earlier bank statements were presumably lost because Gregory's bank retains statements for only seven years. *See* Bank of America, Account Statement FAQs, https://www.bankofamerica.com/deposits/account-statements-faqs/ ("How long will Bank of America retain statements? We keep copies of your statements for up to 7 years."). But if Gregory had started preserving evidence when he hired his attorney in this matter, in May 2016, he would have had bank statements for three additional years. *See* Def.'s Mot., Griffin Affidavit ¶¶ 2–3. And if he had started preserving evidence when Carmichael's attorney first advised him of the allegations that he overcharged her for rent, Gregory could have preserved all relevant bank statements. *See* Def.'s Mot., Ex. F. When a delay in responding to a lawsuit results in "a loss of evidence and increased difficulties in discovery," it causes "substantial[] prejudice" to the delinquent party's opponents. *Canales v. A.H.R.E., Inc.*, 254 F.R.D. 1, 11 (D.D.C. 2008). Gregory's delay has done so here.

The length of Gregory's delay also weighs against him. He filed his Rule 60 motion on September 6, 2018, exactly one year after judgment was entered, and the very last day on which he could seek relief under Rule 60(b)(1). *See* Fed. R. Civ. P. 60(c)(1). He did so despite learning of this suit in May 2016, over a year *before* the default judgment

issued. And he offers no reason for waiting from May 2016 until September 2018 to file his motion that is not entirely attributable to him or his attorney.

This leaves only the question whether Gregory acted in good faith. While he may claim to have done so, a claim of good faith *alone* does not outweigh a failure to establish excusable neglect under every other *Pioneer* factor. *See Smith v. District of Columbia*, 430 F.3d 450, 456 n.5 (D.C. Cir. 2005). Accordingly, Gregory's delay here was not excusable, and he is not entitled to relief under Rule 60(b)(1).

Gregory next turns to Rule 60(b)(3). This provision applies in cases of "fraud[,] . . . misrepresentation, or misconduct by an opposing party." Fed. R. Civ. P. 60(b)(3). Gregory points to none of the three. Instead, his argument merely reiterates his denial of the allegations in Carmichael's complaint. *See* Def.'s Mot. at 11 ("The essential misrepresentation which led to this judgment is that Ms. Carmichael had overpaid her monthly rent to Mr. Gregory fifty-two times."). But to prevail under Rule 60(b)(3), Gregory needs to "demonstrate that [his opponent's] conduct prevented him from presenting his case fully and fairly." *People for the Ethical Treatment of Animals v. United States Dep't of Health & Human Servs.*, 226 F. Supp. 3d 39, 55 (D.D.C. 2017). Simply couching complaint allegations as "misrepresentations" does not satisfy this standard. Nothing about the content of Carmichael's complaint prevented Gregory from appearing and responding to the allegations.

Finally, Gregory invokes Rule 60(b)(6), which permits courts to vacate judgments for "any other reason that justifies relief." Fed. R. Civ. P. Rule 60(b)(6). Like his excusable neglect argument, the Supreme Court's reasoning in *Pioneer* forecloses Gregory's Rule

60(b)(6) argument. There, the Supreme Court explained that "a party must show 'extraordinary circumstances' suggesting that the party is faultless in the delay," in order "[t]o justify relief under [Rule 60(b)](6)." *Pioneer*, 507 U.S. at 393. To say the least, Gregory is not faultless in his delay in responding to this lawsuit. He knew about this case in May 2016, but waited until September 2018, a year after default judgment was entered, to appear. That decision is attributable to him. As such, relief from the judgment is similarly precluded under Rule 60(b)(6). *See id.*

## CONCLUSION

For all of the foregoing reasons, Gregory's Motion for Relief from Default Judgment Pursuant to Federal Rule of Civil Procedure 60 [Dkt. # 23] is DENIED. An Order consistent with this decision accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge